**COLORADO INTERSTATE GAS COMPANY,
a Corporation, Plaintiff in Error**

v.

**Leroy LONG and Letha Long, his wife,
Defendants in Error.**

**No. 39594.**

Supreme Court of Oklahoma.

June 5, 1962.

Lansden & Drum, Beaver, for plaintiff in error.

Holcomb & Holcomb, Buffalo, for defendants in error.

JOHNSON, Justice.

Colorado Interstate Gas Company, a corporation, plaintiff in error, appeals from a judgment entered on the verdict of the jury in a condemnation proceeding wherein the Company condemned a pipeline easement, or right of way, across a quarter section in Harper County, Oklahoma, belonging to the defendants for the laying of a four-inch gas pipeline, which at the time of the trial had been laid. The area covered by the easement was 3.13 acres.

No complaint is urged herein concerning the procedure followed. The Commissioners fixed the damages sustained by the defendants by reason of the taking of the right of way or easement at $2,000.00. The award was filed, and thereafter in due time the plaintiff filed demand for jury trial. The defendants, Mr. and Mrs. Leroy Long, likewise filed demand for a jury trial.

The issues as to the amount of damages was thereafter tried in November, 1960, to

a jury in Harper County, Oklahoma, and the jury returned a verdict for $1,600.00.

In due time motion for new trial was filed by the plaintiff which was overruled, from which action of the court plaintiff appeals.

The parties appear in this court in the same positions as in the trial court and will be referred to by their trial court designations.

The plaintiff urges three grounds for reversal. 1. The admission of incompetent evidence. 2. Misconduct of counsel for defendants. 3. Error of the court in refusing to give plaintiff's requested Instruction No. 1.

■ Considering these in reverse order, we quote the requested instruction:

"Plaintiff's Requested Instruction No. 1

"You are instructed that if you find from the evidence that the defendants Leroy Long and Letha Long, his wife, have suffered certain damages to their land which did not arise from the construction or operation of a pipeline by plaintiff across said land you are not to consider such damages in determining the amount you shall award defendants.

"Refused: C. R. Board, District Judge, 11–16–60"

We find nothing in the court's instructions given which would justify the awarding of damages for the elements excluded under such requested instruction. On the contrary, the court's Instruction Nos. 2 and 3 specifically limit recovery to the difference in the fair market value of the entire tract immediately before the appropriation of the easement and the fair market value immediately after the construction of the pipeline. If defendants suffered damages from some other source through the construction and operation of this pipeline, we are convinced that the instructions given excluded such damages from consideration by the jury.

In the body of the opinion in Hartford Fire Ins. Co. v. Clark, 205 Okl. 416, 238 P.2d 327, it is said:

" 'Where the instructions given reasonably state the law applicable to the case, this court will not reverse the cause for a refusal to give a particular instruction requested by the plaintiff in error.' "

■ The remaining two complaints urged are discussed together by the appellant. A consideration of these alleged errors necessitates a review of the evidence and the rulings and comments of the trial court.

Five witnesses testified for the defendants concerning the depreciation of the farm by reason of the construction of the pipeline. While there was a difference of opinion concerning the value before and after the construction, the difference between the two valuations in every case approximated $2,000.00. In weighing the value of this testimony, it should be borne in mind that there was a gas well on this property and certain installations in connection therewith which were not on the easement sought in this action. Further, there had been much driving of cars in and out from the well, none of which was established to be by plaintiff herein. With these facts in mind, the various witnesses for defendants were asked to detail what they considered in arriving at the valuations which they expressed.

Mr. Collins, a witness for the defendants, testified as follows:

"Q. * * * How do you arrive at that value?

*     *     *     *     *     *

"A. Well, about the only way I could get at it would be the damage they done. No telling how long that will be there. You know they have lots of roads going down through there. How long that will be there, nobody knows.

"Q. There are also roads aren't there?

"A. Yes, you have to have roads to go to the well, don't you?

"MR. HOLCOMB: We object.

"THE COURT: Overruled.

"Q. Was that what you were considering, the road?

"A. Partly and the pipeline where they laid the line 30 or 40 feet across there. It would be 7 or 8 years before it was across there."

"Mr. Laverty, another defense witness, testified:

"Q. Does that take into consideration, is that the only thing that would cause you to take $2,000 less for the land or are there other things?

"A. I would figure the installations and drips and one thing and another.

"Q. Where the well is located?

"A. Yes.

"Q. And well road?

"Q. Yes.

"A. The people going in and out to the well itself?

"A. Yes."

Mr. Bossart, also a witness for defendants, testified as follows:

"Q. Now, when you were talking about this declination value you put quite a bit of emphasis on this road, didn't you?

"A. No, on your ridges, ditches and everything left on the land.

"Q. And on the road too?

"A. The road, I had nothing to do with it because I didn't figure it in this deal particularly because I didn't have a road then. In his case I would say yes.

"Q. You figured that in?

"A. Yes."

Mr. Bonham testified for the defense as follows:

"Q. Not as a matter of—simply a matter of imagination but as a practical matter how does the roads in connection with the pipeline and this right of in-gress and egress to your place, how does it affect the cattle business?

"THE COURT: Since an objection is interposed, I have to comment again. I think and certainly not trying to drive but I think the question should be concluded by if it does affect them because you leave the inference. The question should be concluded by if it does affect them.

"Q. Does that affect the cattle business?

"A. I think it does myself.

"Q. Then state to the jury in what way it affects it?

"A. I have had cattle, run cattle the last 10 years and especially milch cows. It affects milch cows more than anything else. On the other cattle, your milch cows, the milch cows themselves are very figity sometimes. If you go driving through there or anything else can disrupt them in the amount of milk they give. It can be 2 or 3 days where they drive in and out all the time your cattle have got that. They have a helicopter that comes in and out. That definitely will do it.

"MR. LANSDEN: We object to this whole line of testimony and ask that it be stricken because there is no showing this going in and out is in connection with this pipeline.

"THE COURT: Overruled.

"MR. LANSDEN: Give us an exception.

"THE COURT: Yes, sir."

"Mr. Rambo, defendants' witness, testified as follows:

"Q. Based on your experience of pipelines through your pasture, what effect, if any, does the construction, operation and maintenance of that pipeline through the pasture have on livestock?

"A. Well, it keeps them stirred up all the time where they are driving

through. Strangers in among the cattle keeps them stirred up.

"MR. LANSDEN: It is supposing something not in evidence, people driving in on the pipeline.

"THE COURT: Overruled.

\*     \*     \*     .\*     \*     \*

"Q. Describe all the deteriments you have taken into consideration in assessing this diminution of value in the sum of $2,000, what you have taken into consideration, what is the diminution?

"A. Interference of your stock, traveling in and out of your place, leaving the gates open and stock getting out on highways and salt water pit there. When the dehydrator loads up, it kicks out, you get spray of salt water and chemicals which kills grass around it.

\*     \*     \*     \*     \*     \*

"Q. And going in and out to the dehyradtor and road going in and out to the well and dehydrator?

"A. There is only one road in there.

"Q. You took all that into consideration, these people going in there, the meter house and dehydrator and heater, all that, it that true?

"A. Yes."

All of the above testimony was considered by the trial court when the motion for new trial was presented. It elicited the following comment from the bench.

"The Court is duty bound to make this observation. The Court is of the opinion the questions that were propounded were done so, they were propounded with calculated attempt to prejudice the jury and the Court endeavored to admonish the jury those particular questions referred to and answers given were highly prejudicial. After the evidence was in, the court again admonished the jury to disregard the particular questions propounded to a witness and what he received for compensation or damages for his land and hoped that those separate admonish-

ments impressed the jury that they should not consider that particular evidence which was incompetent, irrelevant and prejudicial. Motion for New Trial is overruled."

Obviously, the court very reluctantly approved conduct of counsel and the admission of such evidence.

Again on the redirect examination of the witness Rambo, the following took place:

"Q. On this road you say you have across a quarter section of land, on this quarter section of land where this road is, where pipeline is, there is no road, tell the jury what damages you received from the pipeline company for construction of that pipeline across the quarter section?

"A. $2,480.00.

"MR. LANSDEN: We object.

"THE COURT: Sustained.

"MR. HOLCOMB: What is it?

"A. $2,480.00.

"MR. LANSDEN: We ask the court to instruct the jury to disregard this matter.

"THE COURT: Ladies and gentlemen of the jury, the answer and response of the witness will be disregarded by you, if you are able to do so.

"MR. LANSDEN: Comes now plaintiff, Colorado Interstate Gas Company, at this time and moves the court to declare a mistrial and discharge this jury for the reason that highly improper and prejudicial matter was allowed to go to them before plaintiff had an oppertunity to object to prevent such matter to be considered.

"THE COURT: The court is mindful of the fact that the question is prejudicial and answer is prejudicial and will admonish the jury not to consider the same and make every effort to do so and motion is overruled.

"MR. DRUM: Exception.

"THE COURT: We have certain tests, certain standards in trial of this

matter and the last question was propounded and answer was given and is not embraced in that standard and in fairness to all concerned, you will make every effort possible to disregard the question and the answer given in your deliberations in the trial of this matter.

"MR. HOLCOMB: Exception. That is all."

Coupled with the above, the record discloses that in closing argument, counsel for defendants informed the jury that they might consider installations owned by the plaintiff not located on the right of way being condemned. Objection was interposed, but no ruling was made by the trial court.

The sum and substance of these various incidents were: 1. Improper evidence went before the jury from several witnesses. 2. Improper argument was made to the jury by counsel for defendants. 3. The trial court obviously disapproved of the conduct of the case.

We think the trial court properly summarized the situation when he said the trial evidenced a "calculated attempt to prejudice the jury."

In Green Construction Co. v. Lampe et al., 174 Okl. 351, 50 P.2d 286, this court said in the first paragraph of the syllabus:

"Where counsel in argument makes a statement of a material fact not in evidence against the objection of the other party, he violates the right of a fair trial, and where the trial judge fails to pass squarely on the objection, and, if sustained, fails to admonish the jury to disregard such statement as not in evidence, we must reverse, unless this court can ascertain from the record that no harm resulted."

The rule is well established by decisions of this court that the admission of incompetent evidence to warrant reversal must be shown to be prejudicial. Hasty Messenger Service v. Simpson, Okl., 363 P.2d 370, and Marten v. Credit Adjustment Service, Inc., Okl., 349 P.2d 742.

But where such incompetent evidence is elicited from five different witnesses, misstatements made in closing argument, and such conduct characterized as prejudicial by the trial judge, we hold that under such circumstances the plaintiff did not have a fair and impartial trial.

Judgment reversed for a new trial.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, HALLEY and BERRY, JJ., concur.